UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOBLE AARON SHABAZZ,

          Plaintiff,

    v.

NEW BRUNSWICK POLICE DEPT., et al.,

          Defendants.

Civil Action No. 13-1975 (FSH)

OPINION

Presently before the Court is a Motion for Leave to File a Second Amended Complaint by *pro se* Plaintiff, Noble Aaron Shabazz. *See* Docket Entry No. 24. Plaintiff seeks to add 14 new parties, claims based on the state law corollary of his federal claims, and claims for additional injunctive relief. *Id.* Defendants oppose the motion and argue that Plaintiff's amendments are futile and prejudicial. *See* Defendants' Opposition to the Motion at Docket Entry No. 29 ("Defs.' Opp."). The Court considered Plaintiff's motion without oral argument pursuant to L. Civ. R. 78.1. For the reasons stated below, Plaintiff's Motion for Leave to file a Second Amended Complaint is denied.

I.      **Background and Procedural History**

    a.  *First Amended Complaint*

Plaintiff instituted this action on March 28, 2013, and filed his First Amended Complaint ("FAC") as of right on April 19, 2013. *See* Docket Entry Nos. 1 & 5. Plaintiff alleges Defendants City of New Brunswick, New Brunswick Police Department, Officer Daniel Mazan, Officer Brandt J. Gregus, Officer Brad Berdel, Officer Rodney Chiang, and eight John Doe

police officers violated his civil rights during two traffic stops, his arrest, and subsequent trial before the municipal court. *See* FAC, at Docket Entry No. 5.[1]

The first stop occurred on or about May 4, 2010 with the second stop taking place a few months later on or about July 9, 2010. *See* SAC ¶¶17 & 124. Plaintiff asserts that on or about May 4, 2010, he was pulled over by Defendants Mazan and Gregus for allegedly talking on his cell phone while driving. SAC ¶¶17 & 39. Mazan directed Plaintiff to hand over his license, registration, and proof of insurance. *Id.* ¶19. Plaintiff states that he and the two Defendants engaged in several heated exchanges about Plaintiff's compliance with directions, his assertion of his rights, the officers' search of Plaintiff's car, and finally Plaintiff's denials regarding the officers' questions about a person named Lamont Sterling. *Id.* ¶¶20-54. Plaintiff states that Gregus threatened to arrest and then arrested Plaintiff for obstruction of justice. *Id.* ¶¶55-68. Plaintiff further alleges that on the way to the police station, the officers antagonized him and made racially charged statements. *Id.* ¶¶70-105. Plaintiff claims he was held for a few hours, ticketed for talking on his cell phone, obstruction of justice, obstructed license plates, and careless driving. *Id.* ¶106. Plaintiff claims these tickets were unfounded and indicate vindictiveness and malice by the officers. *Id.*

The second incident occurred on July 9, 2010, when Plaintiff was stopped for blocking traffic. *Id.* ¶¶124 & 140. He states the police stopped him as he pulled into the parking area in front of a hotel to drop off his passenger. *Id.* ¶126. Defendant Officer Berdel approached his car and asked for Plaintiff's license, registration and proof of insurance. *Id.* ¶127. Plaintiff alleges the Defendant officers took a hostile approach and began questioning him. *Id.* ¶¶128-136.

---

[1] For the most part, the allegations about the traffic stops are identical in the FAC and Plaintiff's proposed Second Amended Complaint ("SAC"). All references are taken from the SAC unless otherwise noted. For purposes of this motion, the Court takes all facts plead as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 201-11 (3d Cir. 2009).

Defendant Officer Rodney Chiang asked for identification from Plaintiff's passenger and, as Plaintiff asserts, spoke back to Plaintiff's passenger in a hostile tone. *Id.* ¶¶137-138.

Plaintiff states that while Berdel radioed to dispatch to run Plaintiff's documents, at least three more patrol cars and several more officers arrived on the scene. *Id.* ¶¶142-43. Plaintiff claims that Berdel then opened the car door, ordered Plaintiff out, pulled Plaintiff out of the car, and searched his pockets. *Id.* ¶¶144-45. Plaintiff and his passenger were then ordered to sit on a concrete parking stop, surrounded by several other officers, while Berdel searched Plaintiff's car. *Id.* ¶¶145-46. Plaintiff alleges the other officers did nothing to stop Berdel or Chiang. *Id.* ¶145. Plaintiff was issued a citation for an expired inspection sticker and was released. *Id.* ¶149. Defendants Berdel and Chiang, however, arrested Plaintiff's passenger. *Id.* ¶150.

The only substantive new information added in the SAC in regard to the two traffic stops is the addition of proposed Defendant Officer Ganzer and the alleged involvement of the dispatchers. Plaintiff substituted and/or added Ganzer to the eight John Doe officers who responded to the July 9 stop and watched Plaintiff as Berdel searched Plaintiff's car. *See id.* ¶145. Plaintiff alleges that Ganzer, with the other officers, failed to intervene and in doing so, conspired with the other Defendants to violate his constitutional rights. *Id.* Plaintiff also names Jimmy Hickey and Mike Baird as the dispatchers during the July 9 stop. *See id* ¶293. Plaintiff alleges that both Hickey and Baird falsified the "computer aided dispatch record" by listing only Ganzer as having been dispatched to the scene when the report should have contained between one and eight officers. *See id.* Plaintiff argues that the dispatchers changed the record and in doing so "participated in the conspiracy to conceal police misconduct." *Id.*

*b. Second Amended Complaint*

The remaining allegations that Plaintiff seeks to add are additional facts and theories relating to the municipal trial, Plaintiff's Internal Affairs ("IA") complaints, and attendant difficulties he experienced in receiving a response to the IA investigations. *See* SAC, ¶¶17-297. While Plaintiff includes a substantial amount of detail, for purposes of brevity, the Court will summarize the basic claims and events and how they relate to the proposed new Defendants Borow, Adochio, Cintron, Baird, Hickey, Ganzer, Miller, Carroll, Goldeski, Caputo, Cahill, Gayden, Hoffman, and Delbagno.

i. Municipal Trial

Plaintiff states that he went to trial on both of his traffic stops and, as a preliminary matter, he challenged the jurisdiction of the municipal court. *Id.* ¶¶ 108-11 & 157.[2]  Plaintiff alleges that proposed Defendant Philip Borow, the municipal court judge, directed proposed Defendant Adochio, the municipal prosecutor, to argue for jurisdiction. *Id.* ¶¶109-10.  Plaintiff states Borow insulted Plaintiff for challenging the court's jurisdiction and then ruled against Plaintiff without addressing Plaintiff's contentions. *Id.*

Plaintiff states that his trials were consolidated and occurred on several dates over time. *Id.* ¶¶110-11 & 157.  Plaintiff claims that under his cross-examination, Gregus, Mazan, and Berdel each made false statements under oath. *Id.* ¶¶111-120 & 157.  Plaintiff asserts that proposed Defendant Mark Cintron, another municipal prosecutor, aided the officers in maliciously prosecuting Plaintiff by denying him discovery and proceeding with the trial despite knowing of the officers' perjury. *See id.* ¶¶158-159.

---

[2] Plaintiff alleges some facts in the FAC as to the trial, see ¶¶105-114, 117 & 150-70, and IA complaints, 105 & 150.  In these paragraphs, Plaintiff details the cross-examination of Gregus, Mazan, and Berdel, timeline for the trial and decision and filing of IA complaints, respectively.  Plaintiff names Borow and elaborates upon the allegations directed towards him in the SAC.

Plaintiff alleges Borow conspired with the prosecutors and officers to deprive Plaintiff of his rights. *Id.* ¶157. Plaintiff points to Borow's citation of an alias "Aaron Sterling," which Plaintiff states was known only by the officers and did not appear on any of his court papers. *Id.* Additionally, Plaintiff states that Borow took a long time to render his decision, then dismissed only some of the traffic citations. *Id.* ¶¶177-79. Plaintiff further alleges Borow misused his office to issue a warrant for failure to appear, causing Plaintiff's license to be suspended. *Id.* ¶¶184-186. He also alleged Borow intimidated municipal administrators into denying him access to records. *Id.* ¶187.

### ii.   Internal Affairs Complaints

Following the two traffic incidents, Plaintiff states that he filed IA complaints against the known and unknown officers present. *Id.* ¶¶108 & 156. Plaintiff asserts that at different stages he received correspondence from proposed Defendants Carroll, Miller, Delbagno, and Goldeski about the progress, status and/or results of his IA investigations, but that any further attempts Plaintiff made to provide or get additional information were met with silence. *See id.* ¶¶176, 192, 195, 198, 205 & 207-08. Plaintiff also asserts that Miller obstructed Plaintiff's own investigation and trial preparation. *Id.* ¶¶212-228. Following the conclusion of his trial, Plaintiff states that Goldeski informed that the officers were exonerated of the IA complaints. *Id.* ¶208. Plaintiff argues that exoneration is contrary to the Attorney General's procedures and indicates a conspiracy among the IA unit to cover up the misconduct of other officers. *Id.* ¶209. Plaintiff cites other IA investigations involving non-related individuals as further evidence of the wide-spread conspiracy between the IA department and the police officers to conceal violations by officers and a policy to target or profile people by race. *Id.* ¶¶234-246.

Plaintiff filed a formal request with proposed Defendant Community Liaison Charly Gayden to have his IA investigation reviewed.  *Id.* ¶249.  As stated by Plaintiff, proposed Defendant Mayor James Cahill established the Community Liaison Office to review complaints that IA investigations were mishandled and appointed Gayden as the Liaison.  *Id.* ¶248.  Plaintiff asserts that he contacted Gayden and Cahill, and initially heard no response.  *Id.* ¶¶249-51.  Plaintiff asserts extreme delay by Defendants in scheduling and conducting the review as well as attempts by Gayden trying to persuade him from having a hearing.  *Id.* ¶¶249-50 & 271-74.  Eventually, Plaintiff states his hearing was held with proposed Defendant Hearing Officer Barnett Hoffman.  *Id.* ¶263.  Plaintiff alleges there were several irregularities in the handling and disposition of his hearing, that neither Gayden nor Hoffman adhered to policy, and that the Chief of Police, Anthony Caputo, never advised Plaintiff of the status as was required by hearing procedures.  *Id.* ¶¶275-292.  Plaintiff contests the results of Hoffman's report and points out various faults with Hoffman's methodology and report.  *Id.* ¶¶284-292.  Plaintiff cites these issues indications that Hoffman is part of the policy or custom established to hide police misconduct.  *Id.*

Plaintiff alleges the policy to hide police misconduct is wide-spread, that the City of New Brunswick and the New Brunswick Police Department are aware of it, and "[d]espite this knowledge, the Police Department, Community Liaison Office, Mayors [sic] Office and Municipal Magistrates [sic] responses were so inadequate as to show a deliberate indifference to or tacit authorization of the offensive conduct, policy and/or custom and said inaction as the direct and proximate cause of the plaintiffs' [sic] injuries."  *Id.* at ¶247.

iii.   Claims and Relief Requested

Plaintiff's SAC culminates with twelve federal claims, three "Pendant State Claims," joint and several liability on Plaintiff's federal and state law claims, and a request for injunctive relief.  *See id.* ¶¶298-386.  The twelve federal claims, first state law claim, and claims for joint and several liability are substantially the same as those pled in the FAC.  Plaintiff seeks to add three new claims: (1) Plaintiff's Second State Claim under the Fourteenth Amendment for violation of equal protection, *see id.* ¶¶ 374-377; (2) Plaintiff's Third State Claim under § 1983 for negligent hiring and supervising of discriminatory officers, *see id.* ¶¶378-82; and (3) Plaintiff's Fourth State Claim for injunctive relief, *see id.* ¶¶384a-m.  As to the original claims, Plaintiff also seeks to amend to add some, if not all, of the new proposed Defendants. [3]

In Claim One, Plaintiff alleges that Defendants deprived him of his civil rights guaranteed under the "First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 U.S.C. § 1983 as well as Title VI of the Civil Rights Act of 1964."  SAC ¶300.  Plaintiff asserts the violations arose out of the conduct of Defendant officers pursuant to a policy established by Defendants the City of New Brunswick and the New Brunswick Police Department.  *Id.* ¶¶300-01.

Claims Two, Three, Four, Five, and Six stem from the treatment of Plaintiff during the two traffic stops.  Claim Two alleges that Defendants subjected Plaintiff to an illegal and unlawful seizure of Plaintiff's person, stating that "plaintiffs' [sic] liberty was restricted for an

---

[3] It is not clear which Claim pertains to which Defendant.  In some places in the Claims section, Plaintiff references the original Defendant police officers or their conduct during the traffic stops.  *See, e.g.*, Claim One, Deprivation of Federal Civil Rights, SAC ¶300 ("the acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers…").  However, at many times, Plaintiff merely refers to "defendants."  The Court notes that in the SAC, Plaintiff defines and refers to various groups as "defendants."  *See, e.g., id.* ¶¶15-16.  Thus, for purposes of this motion, the Court will assume and review Plaintiff's amendments as if they were plead as referring to all original and proposed Defendants.  *See Erickson v. Pardus*, 551 U.S. 89 (2007)("A document filed by a *pro se* is 'to be liberally construed.'")(citation omitted).

extended period of time and the plaintiff was put in fear for his safety was humiliated and subjected to handcuffing and other physical restraints, without probable cause." *Id.* ¶306.  In Claim Three, Plaintiff asserts Mazan, Gregus, Berdel and Chiang used excessive force, stating they were "physically menacing, objectively unreasonable and in violation of the plaintiffs' [sic] constitutional rights." *Id.* ¶308.  In Claim Four for false arrest, Plaintiff claims that he "was subjected to an illegal prolonged detention, illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated by the defendants without any probable cause, privilege or consent." *Id.* ¶311.  In Claim Five, Plaintiff asserts he and his companion "were subjected to an illegal, improper and unlawful search of their private automobile and personal property without any probable cause, privilege, or consent." *Id.* ¶315.  In Claim Six, Plaintiff asserts Defendants subjected him to cruel and unusual punishment by "physically menacing, assaulting and accosting the plaintiff"; "deliberately placing the hand cuffs [sic] on very tight"; "[s]ubjecting plaintiff to verbal abuse, rude and insulting language, as well as antagonistic and racially inflammatory remarks and constant badgering designed to harass and intimidate"; and "conducting a prolonged detention, requiring the plaintiff to sit for approximately 32 minutes on cold hard asphalt while defendants conducted an illegal search." *Id.* ¶321.

Plaintiff asserts that the two traffic stops were racially motivated pursuant to a policy of racial profiling.  *Id.* ¶328.  Plaintiff alleges in Claim Seven that Defendants

> implemented and enforced, encouraged and sanctioned a policy, practice and custom of unconstitutional stops, illegal detentions and illegal searches of New Jersey residents by the New Brunswick Police department and defendant police officers initiated the "pretextual" stops against the plaintiff, Noble Aaron Shabazz, without probable cause or reasonable suspicion required by the Constitution and used race and/or national origin as the determinative factors in deciding to stop, detain, and search the

>           plaintiff in violation of the Equal Protection Clause of the United
>           States Constitution.

*Id.* ¶327.

Plaintiff's Claim Eight asserts Defendants are liable for malicious abuse of process because "Defendants issued legal process to detain the plaintiff and subject him to an unlawful seizure of his person, to an illegal and unlawful arrest, to excessive force, to simple assault, harassment and to unlawfully subject his private automobile and property to an illegal search and seizure" and that their actions "were designed to obtain a collateral objective outside the legitimate ends of the legal process."   *Id.* ¶¶333-34.

In Claim Nine, Plaintiff alleges that Defendants participated in a conspiracy to violate his and others' civil rights.  In whole, Plaintiff alleges:

>           All of the aforementioned Defendants, including JOHN DOE
>           Officers 1-8 who failed to intervene, conspired to violate Plaintiff's
>           civil rights by agreeing among themselves to engage in the conduct
>           set forth above, in violation of 42 U.S.C. § 1985, for which all the
>           defendants are individually liable.  And defendants including
>           police dispatchers, Captain Miller, Lieutenant Carroll, Lieutenant
>           Delbagno, Anthony Caputo, Philip Borow, Mark Cintron, Robert
>           Adochio, Charly Gayden, and Barnett Hoffman conspired to
>           conceal the police officers misconduct and obstruct justice.

*Id.* ¶338.

Plaintiff's Claim Ten asserts that "Plaintiff was subjected to a wrongful and malicious criminal prosecution unsupported by probable cause, and malicious prosecution was initiated by the defendant police officers vindictively for an ulterior motive, in retaliation for plaintiff exercising his rights guaranteed by the U.S. [C]onstitution and state constitution, including the [F]ifth [A]mendment, [F]ourth [A]mendment, [F]irst [A]mendment and [N]inth [A]mendment." *Id.* ¶340.  Plaintiff specifically cites proposed Defendant prosecutor Mark Cintron for frustrating plaintiff's right to discovery and proceeding with trial despite knowing of the officers' perjury. *Id.* ¶342.

In conjunction with Plaintiff's claims for malicious prosecution and abuse of process, Plaintiff also asserts denial of right to a fair trial in Claim Eleven.  Plaintiff asserts that "[t]he defendants violated the plaintiff's right to a fair trial by violating his right to due process when defendant Philip Borow did practice law from the bench by ignoring my special appearance and entering a plea on plaintiff's behalf as if he had power of attorney over plaintiff, against my strong objections claiming I was overruled, so as to falsely arraign and claim jurisdiction over the plaintiff."  *Id.* ¶351.   Plaintiff further asserts that the police officers "fabricated evidence through willfully and maliciously providing false testimony" in order to convict Plaintiff and that the prosecutor conspired against him by withholding evidence and continuing prosecution despite knowing of the officer's perjury.  *Id.* ¶¶352-53.

Plaintiff's final federal claim asserts intentional infliction of emotional distress.  *See id.* ¶¶356-361.  Plaintiff claims:

> All Defendants intentionally and recklessly inflicted emotional distress on the plaintiff by willfully depriving him of constitutional rights, by compelling him defend himself in costly and stressful time consuming litigation for over two years which could have resulted in a criminal conviction and loss of liberty or imprisonment, by conspiring with other Defendants to deny him his civil rights, by retaliating against him for the lawful exercise of his right to cross examination of witnesses, by routinely making false claims that plaintiff failed to appear and suspending plaintiff's license thereby harassing and causing his arrest, by refusing to schedule an Internal Affairs Hearing Review for nine (9) months, by refusing to recommend re-opening my internal affairs investigation after irrefutable evidence was presented a hearing review, and defendants knew or should have known that mental anguish and emotional distress was the likely result of their conduct.

*Id.* ¶357.  Plaintiff further asserts that "Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community."  *Id.* ¶358.

Additionally, Plaintiff states he sustained severe emotional distress and that he was and "will

continue to be emotionally distressed as a condition of anxiety was caused by the traumatic experience of police misconduct and government corruption."  *Id.* ¶360.

Plaintiff asserts five "Pendant State Claims" under New Jersey law.  *See id.* ¶¶ 369-86. Plaintiff's First State Claim uses the corollary statute of § 1983 for civil rights violations under New Jersey law, N.J.S.A. 10:6-2.  Plaintiff names the original Defendants, stating they "deprived, interfered with, and/or attempted to interfere with NOBLE AARON SHABAZZ's exercise and/or enjoyment of their [sic] substantive due process, equal protection rights, and privileges and immunities secured by the United States Constitution and/or laws of the United States and/or the State of New Jersey, in violation of N.J.S.A. 10:6-2."  *Id.* ¶370 (emphasis original).

In Plaintiff's Second State Claim, Plaintiff alleges violation of equal protection under the Fourteenth Amendment, arguing that Defendants "committed illegal, Unconstitutional [sic] and discriminatory acts that constituted acts of a de facto policy to discriminate, use unlawful force, falsely arrest, stop and detain, and illegally search Plaintiff."  *Id.* ¶375.  Plaintiff also asserts that the "[a]ctions of Defendants aforesaid also represent a de facto policy to deny Plaintiff his rights to travel in his natural and religious capacity under the common law, right to equal protection, and right to privacy.  All of these violations contravene Plaintiff's constitutional rights under the United States Constitution and the New Jersey States Constitution including, but not limited to, Article I, Section I; Article I, Section 5 – denial of rights; and Article I, Section 7 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-2)."  *Id.* ¶376.

Plaintiff's Third State Claim appears to be pled under § 1983 and directed towards only Defendants City of New Brunswick and the New Brunswick Police Department.  *See id.* ¶¶378-82.  Plaintiff asserts that the City and Police Department were "negligent in screening, hiring,

training, supervising, disciplining and/or retaining the multiple Defendant Police Officers in this matter." *Id.* ¶379.  Plaintiff states that "Defendant City of New Brunswick and New Brunswick Police Department is [sic] liable for the aforementioned acts both under the doctrine of respondeat superior and because it permitted conditions to exist which facilitated and/or permitted such conduct to occur and is liable for the aforesaid acts under Monell liability." *Id.* ¶381.

Plaintiff's Fourth State Claim seeks injunctive relief against City of New Brunswick, New Brunswick Police Department, Mayor James Cahill, and the City Council.  Plaintiff sets out a 14 point list seeking an injunction and corrective action on Defendants' racial profiling policy, a statistics requirement recording police conduct, a restructuring of the internal affairs review process, and several other improvements of the Internal Affairs process.  *See id.* ¶¶384a-m.

Finally, Plaintiff's Claim Thirteen and Fifth State Claim seek to assert joint and several liability.  *See id.* ¶¶362-63 & 385-86.  Plaintiff also seeks compensatory and punitive damages as well as costs of the litigation.

## II.    Statement of Law

### a.   Motion to Amend

Pursuant to Fed.R.Civ.P. 15(a)(2), leave to amend is to be freely granted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  A court, however, may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)(internal quotation marks and citations omitted). The court uses "the same standard of legal sufficiency" as a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

When faced with a motion to dismiss for failure to state a claim, the court conducts a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual elements from the legal elements of the claim. *Id.* at 210-11. The court must accept the factual elements alleged in the well-pleaded complaint as true, but may disregard any legal conclusions. *Id.*

The second step requires the court to decide if the facts alleges are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009)). A plausible claim is one which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1948). As explained by the Supreme Court in *Bell Atlantic v. Twombly*,

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.*, 550 U.S. 544, 555 (2007)(internal citations and quotations omitted). "Ultimately, this two-part analysis is 'context specific' and requires the court to draw on 'its judicial experience and common sense' to determine if the facts pled in the complaint have 'nudged [plaintiff's] claims' over the line from '[merely] conceivable or [possible] to plausible.'" *Hobson v. St. Luke's*

*Hospital and Health Network*, 735 F. Supp. 2d 206, 211 (E.D. Pa. 2010)(quoting *Fowler*, 578 F.3d at 211).

When considering a *pro se* complaint, the Court is mindful that it must construe the complaint liberally in favor of the plaintiff. *See Erikson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, a litigant's status as a *pro se* does not absolve him or her from complying with Fed. R. Civ. P. 8(a) and *Twombly*. *See Thakar v. Tan*, 372 Fed.Appx. 325, 328 (3d Cir. 2010); *see also McDaniel v. N.J. State Parole Bd.,* 2008 WL 824283, at *1-*2 (D.N.J. Mar. 25, 2008). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.*

### b. 42 U.S.C. § 1938

42 U.S.C. § 1983 does not provide substantive rights on its own, but instead provides a cause of action for the deprivation of rights by a person acting under the color of law. *See* 42 U.S.C. § 1983; *see also Baker v. McCollam*, 443 U.S. 137, 145 n.3 (1979).[4] To state a claim under § 1983, a plaintiff must allege two factors: (1) the violation of a right secured by the Constitution and laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The court's threshold inquiry is whether the plaintiff has identified a right, privilege or immunity. These allegations cannot be stated in general terms since constitutional violations

---

[4] Section 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or the person within the jurisdiction of thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

may have different elements depending on the specific right and/or conduct alleged.  *See Dubois v. Abode*, 2007 WL 2442364, at *4 (D.N.J. Aug. 22, 2007); *see also Ingliema v. Town of Hampton,* 2007 U.S. Dist. LEXIS 73447, at *6 (D.N.J. Oct. 6, 2007)(discussing divergent elements of claims under the First Amendment).  Thus, the plaintiff must narrow the field and assert a specific constitutional right.  *Dubois,* 2007 WL 2442364, *4.  "This requirement is particularly important because failure to allege a violation of a specific constitutional right undermines the purpose of the modern pleading system which is to ensure defendants have sufficient notice of the claims asserted against them."  *See id.* at *5.  Because of this importance, failure to identify the right or privilege that was violated merits dismissal of the claim.  *Id.* at *7.

The second factor looks at the parties involved, specifically the conduct of the defendant.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Baraka v. McGreevy*, 481 F.3d 187, 210 (3d Cir. 2007)(internal citations and quotations omitted).  A plaintiff cannot rely solely on the theory of *respondeat superior.  Brito v. United States Dep't of Justice*, 392 Fed.Appx. 11, 14 (3d Cir. 2010); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials' own individual actions, has violated the Constitution.").  Personal involvement may be based on the defendant's "personal direction or of actual knowledge and acquiescence," but any allegations "must be made with appropriate particularity."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

c.   *New Jersey Civil Rights Act, N.J.S.A. 10:6-2*

Plaintiff seeks to add several claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 ("NJCRA").  As many courts in this District recognize, the New Jersey Civil Rights Act

15

is interpreted analogously to 42 U.S.C. § 1983.  *See Martin v. Unknown U.S. Marshals*, 965

F.Supp.2d 502, 548 (D.N.J. 2013).  Where a party fails to identify "any specific right or theory of

liability grounded in the New Jersey Civil Rights Act or New Jersey Constitution that is different

from [the plaintiff's] claims under § 1983," courts will review claims pled under the NJCRA

consistent with its analysis of the same issues under § 1983.  *See id.*; *see also Pitman v.*

*Ottehberg*, 2013 WL 6909905, at *8 (D.N.J. Dec. 31, 2013).

## III.    Analysis

Plaintiff's proposed SAC encompasses a vast amount of time, effort, and detail.  The

Court notes that while Plaintiff organizes his claims at the end of the SAC, he ties various

allegations to claims throughout his pleadings.  Further, Plaintiff defines various groups, but

refers to each of them interchangeably as "defendants."  The Court, thus, will assume that each

claim both applies to all proposed Defendants and that each Claim incorporates those allegations

made throughout the pleading.

### a.  *Judicial and Prosecutorial Immunity*

Defendants opposed the amendment to join Borow, Adochio, and Cintron because each is

entitled to judicial and prosecutorial immunity respectively.  *See* Defs.' Opp. 3-8.  Plaintiff does

not address this issue in his motion to amend, but in paragraph 179 of the proposed SAC,

Plaintiff argues that Borow did not properly find he had jurisdiction over Plaintiff and thus

neither he nor the prosecutors may assert immunity.[5]  The Court notes, however, that Plaintiff

never explains how or why jurisdiction would have been improper nor raises the issue before this

---

[5] Plaintiff asserts, in relevant part: "Also the municipal prosecutor never proved they had personum jurisdiction over the plaintiff or subject matter jurisdiction and defendant Philip Borow also failed to 'prove' jurisdiction and since all parties involved failed to prove jurisdiction defendant Borow had no lawful authority to adjudicate or move forward with the proceedings in anyway [sic].  And without jurisdiction these defendants had no judicial immunity, prosecutorial immunity or qualified immunity of any kind and are liable for violating plaintiff's rights."

Court outside the legal conclusion that immunity is inapplicable. Thus, the Court finds that there is no challenge to the jurisdiction of Borow or the prosecutors before this Court. The Court, therefore, reviews the substance of Defendants' objection on immunity.

i. Judicial Immunity

In order to protect the sanctity of judicial deliberations, judges acting in their official capacities are generally immune from a suit for monetary damages, including in § 1983 actions. *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000); *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000). Municipal court judges, presiding over courts of limited jurisdiction, are afforded the same protections of the immunity as judges of general jurisdiction. *Figueroa*, 441-443, 445.

Courts apply a two-part inquiry to determine if judicial immunity will not apply. *See Gallas*, 211 F.3d at 768. First, judicial immunity does not apply to non-judicial actions. *Id.* Determination of the type of action depends on "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Second, judicial immunity will not apply where the acts, even if judicial in nature, are "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Actions taken that may be in excess of jurisdiction are, however, entitled to judicial immunity. *Gallas*, 211 F.3d at 769.

Challenges to a judge's immunity are not overcome by allegations of bad faith or malice. *See Mireles*, 502 U.S.at 11. Neither may a judge be held liable for his conduct as a judicial officer because the outcome is considered unfair, controversial, or incorrect. *See Gallas*, 211

F.3d at 769.  Courts, therefore, focus on the challenged action and not the underlying mental state or motive of the officer.  *See id.*

The Court finds proposed Defendant Borow is entitled to judicial immunity because Plaintiff's allegations encompass actions taken by Borow in his role as municipal judge. In Count Eleven, Plaintiff claims Borow denied him a right to a fair trial, claiming Borow found jurisdiction over him, proceed with a trial, entered into the record a name other than Aaron Shabazz, and took a long time reaching a decision. From these allegations, Plaintiff draws evidence of bias and conspiracy with the other defendants to further deprive Plaintiff of his rights. [6]

It is clear to the Court that Plaintiff's allegations source in Borow's conduct as a judicial officer in and around the trial.  Plaintiff's claims of conspiracy and bias stem from the proceeding and outcome of the trial and improperly argue against Borow's motives and decisions.  *See Gallas*, 211 F.3d at 769.  The Court thus finds judicial immunity applies and Plaintiff's amendments to add claims and allegations against Borow are futile.

ii.  Prosecutorial Immunity

Much like judicial immunity, prosecutorial immunity acts to protect the prosecutor's ability to make decisions without fear of suit.  *Imbler v. Pachtman*, 424 U.S. 409, 420-428.  The immunity extends to all activity taken by the prosecutor in a "quasi-judicial" role, including the decision to withhold evidence.  *See id.* (finding that "the respondent's activities were intimately associated with the judicial phase of the criminal process" and thus absolute immunity applies)*;*

---

[6] At ¶¶ 183-187, Plaintiff alleges Borow misused his office to have the New Brunswick Municipal Court improperly issue warrants for his arrest for failure to appear for seemingly unrelated parking tickets and to prevent the court administrators from providing documentation. The Court notes that Plaintiff makes no allegations that Borow issued the warrants or was otherwise involved except for Plaintiff's belief that he abused his office to cause the warrants to issue.  *See id.* ¶185.  The Court finds these allegations are speculative and cannot support a claim of conspiracy or abuse against Borow.  Plaintiff fails to allege any facts on which these allegations may be based and therefore fails to comply with the pleading standards under *Twombly*.

*see also Yaris v. County of Delaware,* 465 F.3d 129, 135-37 (3d. Cir. 2006)("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while function in their prosecutorial capacity.")

The Court finds that absolute immunity applies because Plaintiff's allegations against Adochio and Cintron are confined to their actions taken as prosecutors. The only allegation laid directly against Adochio is that he argued for jurisdiction over Plaintiff. *See* SAC ¶110. This activity is squarely within his role as prosecutor. As to Cintron, Plaintiff alleges that he withheld discovery, maliciously prosecuted Plaintiff, and conspired with other Defendants to proceed with the trial in order to deprive Plaintiff of his constitutional rights. *See, e.g., id.* ¶342. All activity alleged, including the actions alleged as the basis for the conspiracy charge, are action taken in furtherance of Cintron's duties as prosecutor. The Court thus finds the prosecutorial immunity applies and Plaintiff's claims against Adochio and Cintron are futile.

b. *Claim One and First and Second State Claims for Violation of Rights, Privileges and Immunities guaranteed by the United States and New Jersey Constitutions*

In Claim One, the First and Second State Claims,[7] and at various times in the SAC, Plaintiff asserts general violations of rights, privileges, and immunities granted by the United States and New Jersey Constitutions.[8] Plaintiff's Claim One states that Defendants deprived

---

[7] In Pendant State Claim Two, Plaintiff alleges that Defendants "committed illegal, Unconstitutional [sic], and discriminatory acts that constituted acts of a de facto policy to discriminate, use unlawful force, falsely arrest, stop and detain, and illegally search Plaintiff." *See* SAC ¶375. Plaintiff also alleges that "[t]he actions of the Defendants aforesaid also represent a de facto policy to deny Plaintiff his rights to travel in his natural and religious capacity under the common law, right to equal protection, and right to privacy. All of these violations contravene Plaintiff's constitutional rights under the United States Constitution and the New Jersey State Constitution including, but not limited to, Article I, Section 1; Article I, Section 5- denial of rights; and Article I, Section 7 and the New jersey Civil Rights Act (N.J.S.A. 10:6-2)." *See* SAC ¶376. It is unclear whether Plaintiff is asserting violations of his civil rights generally, or whether he is basing his claim on a racial profiling policy, as a state law corollary to Claim Seven. Thus, the Court reviews Pendant State Claim Two in both sections.

[8] For example, Claim One reads: "All of the aforementioned acts deprived plaintiffs [sic] NOBLE AARON SHABAZZ of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth,

Plaintiff of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments and of the Civil Rights Act of 1964. *See* SAC ¶300. Similarly, Plaintiff's First and Second State Claims allege Defendants deprived Plaintiff of due process, equal protection, denial of rights, and other privileges and immunities under the United States and New Jersey Constitutions. *See id.* ¶¶ 370 & 376.

The Court finds that these allegations fail to state a claim because they fail to identify those rights which are violated. [9] As stated above, claims under § 1983 must state a violation of a specific constitutional right, privilege, or immunity. *Dubois,* 2007 WL 2442364, *4. Furthermore, under the pleadings standards enunciated in *Twombly* and *Iqbal,* a plaintiff must plead factual content that allows the court "to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal,* 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556.). Plaintiff seeks to add 14 additional Defendants and hundreds of new allegations to claims that encompass a vast sea of rights and privileges and provide little specificity as to which rights may be violated. It is impossible for the Court or Defendants to predict, identify, and review Plaintiff's allegations under such general and sweeping terms. The Court finds that Plaintiff's Claim One and First and Second State Claims are too vague and undefined to base liability for the conduct alleged and thus do not state a claim for which relief may be granted. The Court, therefore, denies Plaintiff's request to amend Claim One and the First and Second State Claims.

---

Fifth, Eighth and Fourteenth Amendments to the Constitution of the United states of America and in violation of 42 U.S.C. 1983 as well as Title IV of the Civil Rights Act of 1964."

[9] The Court notes that Plaintiff does specify rights and privileges in other claims, such as Claim Four for unlawful seizure. The Court's discussion here is limited to the general allegations as set forth Claim One and the First and Second State Claims.

c. *Claims Two, Three, Four, Five, Six, Eight, Ten and Eleven*

The majority of Plaintiff's claims stem from the May 4 and July 9 traffic stops and trial: Claim Two (Unlawful Seizure of Person); Claim Three (Excessive Force); Claim Four (False Arrest); Claim Five (Unlawful Seizure and Search of Property); Claim Six (Cruel and Unusual Punishment); Claim Eight (Malicious Abuse of Process); Claim Ten (Malicious Prosecution); and Claim Eleven (Denial of Right to Fair Trail).  To state a claim under § 1983, a plaintiff must allege the personal involvement of the defendants.  *See Rode*, 845 F.2d at 1207.  Of the remaining proposed Defendants, only Baird, Hickey, and Ganzer are alleged to either have been present or involved with the two incidents.  Thus, Plaintiff does not state a claim for relief based upon the individual participation of proposed Defendants Miller, Carroll, Goldeski, Caputo, Cahill, Gayden, Hoffman, and Delbagno, and thus does not state a claim under Claims Two through Six, Claim Eight, Claim Ten and Eleven as to them.  Therefore, to the extent Plaintiff seeks to amend to hold them liable under the enumerated claims, such a request is denied.

i.  <u>Baird and Hickey</u>

Plaintiff alleges that Defendants Baird and Hickey were the dispatchers with whom Officers Berdel and Chiang communicated during the July 9 stop.  *See* SAC ¶293.  In paragraphs 167 and 169-71, Plaintiff state that the Berdel and Chiang called into dispatch to check for warrants and call for back-up.  *Id.*  Plaintiff claims in ¶293 that:

> Dispatchers Jimmy Hickey and Mike Baird participated in the conspiracy to conceal police misconduct by falsifying records (computer aided dispatch record) where only one (1) defendant officer, Officer Ganzer, was listed as dispatched to the scene when the audio dispatch recording clearly proves that between 1-8 officers were dispatched to the scene by the dispatcher(s) where they all were accessories to the crimes committed against the plaintiff and all conspired to deprive plaintiff of his rights.

The Court notes, however, that by Plaintiff's own statements, Defendants Baird and Hickey have done no wrong: between one and eight officers were dispatched to the scene and the report states that one officer, Ganzer, was sent.  Taking Plaintiff's allegation as true that the report was modified, the report still reflects what Plaintiff argues it should.  Beyond these claims, Plaintiff offers no other conduct of the dispatchers, let alone facts indicating their involvement with or knowledge of any other Defendants, that could support the allegation of conspiracy.  The Court finds Plaintiff has failed to plead sufficient facts to state a claim for relief against Baird and Hickey.  Thus, Plaintiff's claims are futile and the Court denies Plaintiff's request to amend to add Baird and Hickey and the allegations against them.

ii.  <u>Ganzer</u>

Plaintiff alleges that Defendant Ganzer was called as backup to the July 9 traffic stop when Berdel and Chiang searched Plaintiff's car.  *See* SAC ¶¶143, 145 & 147.  The Court notes that Plaintiff does not allege that Ganzer himself was involved in the search or seizure of him or his property, nor does Plaintiff allege Ganzer participated in any events beyond the appearance at the July 9 stop.  Instead, Plaintiff alleges Ganzer, with the other officers, failed to intervene at the stop, and thus conspired to deprive him of his rights.  *Id.* ¶145.  Under Third Circuit law, a police officer present at the scene of another officer's violation of constitutional rights may be held liable under § 1983 if he or she could intervene in the violation by another officer but failed to do so.  *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002); *see also Garbacik v. Janson*, 111 Fed.Appx. 91, 94 (3d Cir. 2004).

Defendants argue, however, that Plaintiff's Claims Two through Nine should be denied as futile because the statute of limitations has run.  *See* Defs.' Opp. at 17-18.  Defendants assert that the applicable statute of limitations for a § 1983 case is the same as the state statue for

personal injury cases, here two years.  *Id.* at 17 (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)).

Defendants state that Plaintiff's claims accrued at the May 4 and July 9, 2010 traffic stops, but

that Plaintiff did not file his original complaint until March, 2013, almost three years later.  *Id.* at

17-18.  Defendants argue that Plaintiff's time has run and thus any amendments are futile and

should be denied.  *Id.* at 18.

Generally, the statute of limitations is used as an affirmative defense and is not properly

raised in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Oshiver v Levin,*

*Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  However, "an exception is

made where the complaint facially shows noncompliance with the limitations period and the

affirmative defense clearly appears on the face of the pleading."  *Id.*

Accrual of a claim under § 1983 occurs when the injured party "either is aware, or should

be aware, of the existence and source of an injury."  *Oshiver*, 38 F.3d at 1385.  The accrual is

triggered by the party's knowledge of the actual injury, and not the party's realization of the

cause of action.  *Id.* at 1386; *see also Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991)("The

plaintiff need not know the exact medical cause of the injury; that the injury is due to another's

negligent conduct; of that he [or she] has a cause of action.").

In the proposed SAC, Plaintiff seeks to name Officer Ganzer as an officer present at the

July 9, 2010 traffic stop and alleges Ganzer failed to intervene to protect Plaintiff from the

violations of other officers.  *See* SAC ¶145.  The Court notes that Plaintiff did assert the presence

of John Doe officers at the July 9 incident in his original Complaint, ¶139, filed on or about

March 28, 2013, and in the FAC, ¶139, filed on or about April 19, 2013.  Additionally, Plaintiff

asserts in his brief in support of the instant motion that he seeks leave to add new defendants that

were previously unknown and recently discovered due to substantial effort on his own part. *See* Plaintiff's Brief in Support at 4, Docket Entry No. 24.

Despite Plaintiff's diligence, Plaintiff's SAC suffers from a facial flaw as to proposed Defendant Ganzer. As Plaintiff alleges, Ganzer failed to intervene during the July 9, 2010, traffic stop. Claims Two through Six and Claim Eight all stem from the traffic stops, at which Plaintiff was present and aware of the activity that occurred. Thus, Plaintiff's claim as to Ganzer accrued at the July 9 traffic stop. Plaintiff's original Complaint, in which he inserted John Doe Officers, was filed March, 2013, past the two year statute of limitations. Even if Plaintiff had intended Ganzer to be one of the original John Doe Officers and had not discovered Ganzer's identity until recently, his original filing was still past the statute of limitations.[10] Thus, Plaintiff's request to add Defendant Ganzer to Claims Two through Six and Eight is futile.

The Court notes that Claims Ten and Eleven refer to malicious prosecution and denial of fair trial. Plaintiff makes no allegations as to Ganzer's involvement in the trial or conduct following the traffic stop and thus makes no allegations by which Ganzer may be held liable under claims Ten and Eleven.

Finally, the Court notes that Plaintiff also seeks to hold Ganzer liable under a theory of conspiracy to deprive Plaintiff of his constitutional rights. As discussed in Section III.e., *infra*, Plaintiff has provided no factual allegation and instead relies on speculation to support his conspiracy claim. Thus, the Court denies Plaintiff's request to add Ganzer under a theory of conspiracy.

---

[10] The Court makes no findings as to the statute of limitations regarding the original Defendant police officers, City of New Brunswick, or New Brunswick Police Department, as those issues were not properly raised before the Court.

d.  *Claim Seven and Second State Claim – Racial Profiling*

In Claim Seven and the Second State Claim, Plaintiff asserts that Defendants implemented, participated in, and/or supported a policy or custom designed to deprive Plaintiff of his constitutional rights.  *See, e.g.,* Claim Seven, ¶¶ 326-331; Second Pendant State Claim, ¶¶375-76.[11]  Plaintiff alleges that the two traffic stops were racially motivated and that he has evidence to support his belief that those stops were part of a racial profiling policy adopted by the New Brunswick police force.

The Court finds, however, that Plaintiff fails allege the connection between the traffic stops and a policy of racial profiling as to the proposed Defendants in Claim Seven or as to any Defendants in Plaintiff's Second State Claim.  Beyond the racially charged interactions with the original officer Defendants during the traffic stops, Plaintiff does not allege any knowledge, acquiescence, or participation of any of the other proposed Defendants, and instead relies on conclusory statements of Defendants' knowledge.  *See* SAC ¶246.  Plaintiff's attempt to create a connection based on their lack of response to his personal inquiries or delayed response in the IA hearings is based on speculation alone.  *See, e.g., id.* ¶¶245-47.  At most, Plaintiff has alleged they are members of the city government or in the hierarchy of the policy department.  As stated in *Twombly*, a plaintiff has to allege more than the elements of a claim and must allege facts sufficient to raise a claim above a speculative level.  *See id.,* 550 U.S. at 555.  Here, Plaintiff has not done so.  Thus, the Court denies Plaintiff's request to add the proposed Defendants, facts, and claims under Claim Seven and the Second State Claim.

---

[11] As stated in footnote 8, *supra*, it is unclear if Pendant State Claim relies on a racial profiling policy or is a wider statement of a general policy to deprive Plaintiff of his constitutional rights.

e.   *Claim Nine for Conspiracy under 42 U.S.C. § 1985*

In Claim Nine, as well as throughout the SAC, Plaintiff asserts that all Defendants have

engaged in a conspiracy either to harm him and/or to cover up policy misconduct.  *See* SAC ¶

338.  Plaintiff asserts that "all aforementioned Defendants…. conspired to violate Plaintiff's civil

rights by agreeing among themselves to engage in the conduct set forth above, in violation of 42

U.S.C § 1985."[12]  *Id.*

Section 1985(3) "was not intended to provide a federal remedy for 'all tortious,

conspiratorial interferences with the rights of others," or to be a 'general federal tort law."

*Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).  Instead, § 1985(3) "permitted an

action to be brought by one injured by a conspiracy formed 'for the purposes of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the laws, or of

equal privileges and immunities under the law."  *Farber*, 440 F.3d at 134, citing § 1985(3).  To

state a claim for relief under § 1985(3), a plaintiff must assert "(1) a conspiracy; (2) for the

purposes of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in

furtherance of the conspiracy; (4) where by a person is injured in his person or property or

deprived of any right or privilege of a citizen of the United States."  *United Bhd. of Carpenters &*

*Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)(citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-

103 (1971)).

Taking Plaintiff's allegations as true, the Court finds that Plaintiff fails to allege a factual

basis to support a claim for conspiracy under § 1985.  As Plaintiff's SAC is organized in

---

[12] The Court notes that Plaintiff does not specify a provision under § 1985.  However since § 1985(1) refers to preventing an officer from performing duties and (2) refers to obstructing justice, the Court will analyze Plaintiff's claims under (3), depriving persons of rights or privileges.

chronological order, Plaintiff indicates which conduct he believes is evidence of a larger

conspiracy as it occurs.  Plaintiff cites, *inter alia*, a) the delays to receive results, *see, e.g.,* SAC

¶175, 204, 258 & 270;[13] b) being referenced to by an alias other than Aaron Shabazz, *see, e.g.,*

*id.* ¶¶195 & 285;[14] c) various parties' refusal to speak with him, *see, e.g., id.* ¶¶176, 194, 201,

207 & 249-251,[15] and d) failure to follow procedures, policies, and guidelines, *see, e.g., id.*

¶¶201, 212-234 (regarding denial of GPS tracking data), ¶¶244 & 263[16].  Plaintiff argues that the

---

[13] ¶175: "However, even more unusual was the fact that seven (7) months later, the plaintiff had still not received a decision from the defendant [Borow].  The plaintiff firmly believes there is a preponderance of evidence that demonstrates that the defendant magistrate also did act in collusion with the defendant prosecutors and defendant police officers to commit Malicious Prosecution against the plaintiff for many long grueling months, conspired to deprive plaintiff of his rights under the color of law, and to help cover up or conceal the defendant-officers crimes against e [sic] plaintiff."
¶258: "For there to be so many scheduling conflicts, especially under the circumstances, demonstrates either complete incompetence, deliberate indifference towards the Community Liaison & I.A. Hearing Review Offices and complainants, or a routine pattern & practice of willful obstruction of the Internal Affairs Hearing Review process in order to prevent plaintiff from having a hearing so they (the City & Police Department) could continue covering up the police officers criminal misconduct."
[14] ¶285: "But his mention of the 'given name' only demonstrates that he has participated in ex parte communications with the defendant police which led to a biased and unfair decision.  The defendant hearing officer launched a 'secret' investigation after the hearing ended and the investigation appears to be against the plaintiff where information was gathered from the defendant police and considered or accepted as true without ever being introduced into evidence at the hearing."
[15] ¶176: "At the meeting, Lieutenant Delbagno further advised me that now that he was in charge of overseeing Internal Affairs he guaranteed me that my complaints would be honestly investigated, and that if I had any problems I should contact him and he would do his best to help resolve them. However, when I wrote him requesting his help he refused to respond in any way but erected the blue wall of silence thereby conspiring with all of the others defendants."
¶251: "Since I had requested assistance from the Community Liaison **twice within 7 months** and received no response whatsoever, I reasonably concluded it was a deliberate or willful failure to respond on her part, so I then wrote to her boss, Mayor James Cahill, on **December 21, 2012**, informing him or her failures to respond and requested his assistance in finally getting a response, but unfortunately he also willfully failed to respond and refused to assist me in any way." (emphasis in original).
[16] ¶210: "The evidence I provided clearly met the preponderance standard where what I alleged is clearly **more likely to have happened** than not, and the officers version of what happened is clearly **not** 'logical' or plausible especially when the audio dispatch recording completely **impeaches Officer Berdel and Chiang's credibility**.  So it is clear that Internal Affairs, Lt. Carroll, Lt. Miller and Lt. Goldeski, violated the Attorney General Guidelines Internal Affairs Policies & Procedures and conducted an '**improper**' **investigation** in order to '**obstruct justice**' and '**conspire to cover up the officers** [sic] **misconduct**.'" (emphasis in original).
¶244: "So based on the totality of circumstances involving Internal Affairs collectively, all of these violations of the law, guidelines, policies & procedures **create the appearance of cover ups**.  There is no excuse for Internal Affairs investigators ever not following the law, guidelines, policies & procedures." (emphasis in original).
¶263: "At the hearing I presented '**indisputable evidence**' of the officers [sic] lies, police misconduct and criminal violations of my rights, including police reports with '**blank narrative**' and **audio dispatch recording** (CD) of the radio communications between Defendant Officer Berdel, [O]fficer Chiang and Dispatch, which I had also previously provided a copy of this to Defendant Internal Affairs, Lieutenant Carroll and or Captain JT Miller for his review as clear proof supporting my allegations way back in 2010, **which Internal Affairs deliberately ignored,**

occurrences of these events, *inter alia*, demonstrate collusion and conspiracy among Defendants to cover up the police misconduct experienced by him and others. *See, e.g., id.* ¶¶175, 210 & 263.

The Court finds, however, that Plaintiff makes a logical jump that lacks a factual foundation. Critically, Plaintiff lacks allegations of actual collusion and activities in furtherance of a conspiracy. Instead, Plaintiff relies heavily on speculation. For example, Plaintiff alleges Delbagno communicated with him about the IA proceedings, then refused to respond to Plaintiff's further inquiries. *See* SAC ¶176. Plaintiff alleges that Delbagno "erected a blue wall of silence thereby conspiring with all the other defendants." *Id.* Plaintiff provides no evidence of any communication or agreement between Delbagno and the other Defendants, let alone any awareness of their activities. If anything, Plaintiff appears to be relying on Delbagno's position within the IA department as the foundation for his participation in the conspiracy.

As required under *Twombly* and *Iqbal*, Plaintiff must plead facts that pushes his claim from possible to plausible. *See Iqbal,* 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556.). Plaintiff relies too heavily on his belief that misconduct is evidence of conspiracy, and fails to allege factual matter on which his claims may be based. By the allegatios pled in the SAC, it remains equally possible that the delays in decisions or responses and deviations from procedure were merely a product of forgetfulness or an overburdened workload. Moreover, as pled, it is difficult for Defendants to know which of their actions caused or created this conspiracy, making it equally difficult to adequately defend themselves. Thus, the Court finds Plaintiff has failed to sufficiently plead a claim for conspiracy under § 1985. The Court therefore denies Plaintiff's request to add Defendants, allegations, and claims of conspiracy.

---

**showing deliberate indifference and conspiracy to cover up police misconduct and violations of plaintiff's rights**."

> f. *Claim Twelve for Intentional Infliction of Emotional Distress*

Plaintiff asserts intentional infliction of emotional distress by Defendants in Claim Twelve.  *See* SAC ¶¶ 356-61.  To survive a motion to dismiss on a claim for intentional infliction of emotional distress, a plaintiff must plead sufficient factual allegations that, at a minimum, defendants subjected plaintiff to conduct that was intentionally or recklessly "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Ingraham v. Ortho-McNeil Pharm.*, 422 N.J.Super. 12, 21 (App. Div. 2011).  Further, the level of emotional distress must be so severe that no reasonable person would be able to withstand it.  *Id.* at 21.  The inquiry for the court is whether as a threshold matter, Defendant's conduct may reasonably be deemed to meets this standard.  *See Ali v. Jersey City Parking Authority*, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014)(citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).

The Court finds that as a threshold matter, Plaintiff's allegations do not rise to the level of extreme and outrageous conduct.  The wrongs of the proposed Defendants include failure to respond to Plaintiff's inquiries, delays in making determinations, and failure to abide by guidelines.  While likely difficult to endure, they are far from atrocious, and thus are insufficient to state a claim for intentional emotional distress.  Additionally, Plaintiff makes bare assertions as to the level of emotional distress, stating that it was severe, but providing no further facts to support a degree of distress.  *See* SAC ¶359 ("The actions of the Defendants were the cause of the plaintiffs [sic] distress and the emotional distress I sustained was severe.").  Thus, the Court denies Plaintiff's request to amend Claim Twelve for intentional emotional distress.

g.  *Third State Claim for Negligent Hiring of Police Officers and Fourth State Claim for Injunctive Relief*

In Plaintiff's Third State Claim, he asserts original Defendants, the City of New Brunswick and New Brunswick Police Department, were "negligent in screening, hiring, training, supervising, disciplining and/or retaining" the Defendant Police Officers.   SAC ¶379. Plaintiff alleges that the New Brunswick Defendants knew or should have known about the constitutional violations inflicted on Plaintiff and other members of minority groups and failed to discipline or supervise the offending officers.  *Id.* ¶380.  Because of their failures, Plaintiff alleges that the New Brunswick Defendants are liable under theories of *respondeat superior* and *Monell* liability.  *Id.* ¶381.

To the extent that Plaintiff seeks to bring a negligent hiring claim under § 1983, the court notes that *Monell* itself explicitly proscribes liability for local governmental units under a theory of *respondeat superior*.  As stated by the Supreme Court, "a municipality cannot be held liable solely because it employs a tortfeasor – or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978).  Instead, under *Monell*, municipalities and their local governing bodies may be held liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision" officially adopted or instituted through unofficial custom.  *Id.* at 690.  "To establish municipal liability under § 1983, 'a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'"  *Stora v. Brady*, 2014 WL 2155368, at * 7 (D.N.J. May 22, 2014)(quoting *Bielevicz v. Dubinon*, 915 F.3d 845, 850 (3d Cir. 1990)).  Additionally, "[a] plaintiff must demonstrate that, through its deliberate

conduct, the municipality was the moving force behind the plaintiff's injury." *Id.* (citing *Monell*, 436 U.S. at 689).

For claims based on a failure to train under § 1983, a plaintiff must first show "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)(quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Second, a plaintiff must show, "'the identified deficiency in a city's training program [is] closely related to the ultimate injury,' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (quoting *Canton*, 489 U.S. at 391).

Plaintiff does not plead sufficient facts to raise a claim for negligent hiring and supervision of officers under § 1983. Plaintiff draws his support from the fact that he was stopped twice and that he was subject to racially charged harassment at least once. Plaintiff also offers examples of police misconduct with non-related individuals, including a shooting incident of an unarmed man by Officer Berdel and other anecdotes of failed IA investigations. *See* SAC ¶¶ 236-39. Plaintiff, however, fails to allege facts that signify a policy was enacted or by whom. Plaintiff alleges no facts that demonstrate the involvement, knowledge, or support, let alone "deliberate indifference" of the City of New Brunswick, New Brunswick Police Department, or city or police leadership. The Court finds that Plaintiff's allegations of their involvement in a policy is mere speculation based upon the positions that Defendants occupy in the government or police hierarchy. Plaintiff's allegations, thus, fail to raise his claim above the speculative level and are thus futile. The Court, therefore, denies Plaintiff's request to add a claim for negligent hiring and supervision under § 1983.

To the extent that Plaintiff seeks to bring a claim under New Jersey law for negligent hiring, a municipality may be held liable for its negligence in hiring or retaining an officer it knows to have dangerous propensities. *See Denis v. City of Newark*, 307 N.J. Super. 304, 312-14 (App.Div. 1998). "In order to prevail under this theory, a plaintiff must show that the municipality knew or should have known of the police officer's dangerous propensities and the risk of injury he or she presents to the public." *See Love v. Monroe Township*, 2011 WL 765981, at *4 (Feb. 25, 2011)(citing *Denis*, 307 N.J. Super. at 314). Plaintiff's claims fail for two reasons. First, Plaintiff does not specify which officers were dangerous, but speaks broadly about officers who violate constitutional provisions.[17] Second, Plaintiff fails to allege facts as to the knowledge, awareness, or involvement of any Defendants as to the dangerous propensity of any police officers. Instead, Plaintiff states only that the Defendants are members of the police department or city government. The Court finds that plaintiff's reliance on the position of a Defendant in an organization without further inference of their knowledge or awareness is insufficient to state a claim. Thus, the Court finds Plaintiff's claim for negligent hiring and supervision is futile.

Finally, Plaintiff's Fourth State Claim for injunctive relief seeks to rectify and is based upon his claims of racial profiling and failure to train and supervise officers. As the Court has found that Plaintiff has failed to state a claim as to those allegations, Plaintiff's claim for injunctive relief necessarily fails as well. The Court, therefore, denies Plaintiff's amendment to add injunctive relief.

---

[17] The Court notes that Plaintiff includes Officer Berdel's involvement in a shooting incident, but it appears it took place after Plaintiff's July 9 traffic stop. *See* SAC ¶202.

h.   *Claim Thirteen and Fifth State Claim – Joint and Several Liability*

Plaintiff asserts that all Defendants are jointly and severally liable for the conduct and damages incurred.  *See* SAC ¶ 362-63.  For liability to attach under § 1983, Plaintiff must allege the personal involvement of Defendants and cannot rely merely on stating a party is jointly and severally liable.  *See Dykes v. Camp*, 333 F.Supp. 923, 926 (E.D. Mo. 1971)("[T]here can be no joint tort feasors under the statute [§ 1983] unless it can be shown that the defendants participated in the specific acts complained of.").  Thus, the Court denies Plaintiff's request to amend Claim Thirteen for joint and several liability.  Under the same logic, and in light of the Court's denial to add the proposed Defendants and state claims, Plaintiff's request to amend his state law claims for joint and several liability are also denied as futile.  *See Martin*, 965 F.Supp.2d at 548 (finding that claims brought under the NJCRA are interpreted analogously to § 1983 unless the right or theory of liability is particular to the NJCRA or New Jersey Constitution.)

**IV.    Conclusion**

For the reasons set forth above, the Court denies Plaintiff's request to file a Second Amended Complaint.  Plaintiff fails to allege sufficient facts to state a claim for relief as to the proposed Defendants and new claims, with the exception of Defendant Ganzer.  Claims against Ganzer are however time-barred and thus futile.  An appropriate Order shall follow.

Dated: June 27, 2014

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**